UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Holding a Criminal Term
Grand Jury Sworn in on January 28, 2021

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Criminal No. _____ |
| | : | |
| v. | : | Offenses: |
| | : | |
| PAUL MICHAEL GUERTIN, | : | **Count One:** 18 U.S.C. § 1343 |
| | : | (Wire fraud) |
| Defendant. | : | |
| | : | **Count Two:** 18 U.S.C. § 1512(c)(2) |
| | : | (Obstructing an official proceeding) |
| | : | |
| | : | Forfeiture: 18 U.S.C. § 981(a)(1)(C); |
| | : | 28 U.S.C. § 2461(c); 21 U.S.C. § 853(p) |

### INDICTMENT

The Grand Jury charges that:

At all times relevant to this Indictment:

### Introduction

1. Defendant PAUL MICHAEL GUERTIN ("GUERTIN") was a resident of the District of Columbia.

2. From in or about 2007 through on or about August 15, 2017, GUERTIN was employed by the United States Department of State (the "State Department") as a Foreign Service Officer.

3. During his tenure as a Foreign Service Officer, GUERTIN served on multiple State Department assignments abroad, including postings to diplomatic missions in Shanghai, China and Islamabad, Pakistan. GUERTIN also served at State Department headquarters in the District of Columbia in the Bureau of Intelligence & Research ("INR"), the State Department's intelligence office. GUERTIN was later assigned to language training in Taipei, Taiwan.

4. While posted in Shanghai, China, GUERTIN acted as a consular officer at the U.S. Consulate. His official duties included meeting with U.S. visa applicants and adjudicating applications for U.S. visas. In evaluating a visa application, a consular officer has to determine whether or not an applicant meets the legal requirements for travel, based on the applicant's documentation, purpose, length of stay, and financial means. It is within the consular officer's discretion whether or not to favorably adjudicate a visa. It is considered improper for a consular officer to develop a significant business or personal relationship with a visa applicant in a situation where the officer personally adjudicated the applicant's visa.

5. GUERTIN remained employed by the State Department until on or about August 15, 2017.

### Background Investigation and Security Clearance Adjudication

6. As a condition of his employment with the State Department, GUERTIN was required to apply for and maintain a Top Secret security clearance. To complete the initial background investigation, and to maintain his security clearance during periodic re-investigations, GUERTIN was required to fill out a background investigation questionnaire known as a Standard Form 86 ("SF-86") and submit to a background investigation by the State Department.

7. The security clearance adjudication process is set out generally in Executive Order 12968 and specifically in the State Department's Foreign Affairs Manual ("FAM"), specifically, 12 FAM 231-236. First, to have access to classified information, an employee must undergo an extensive background investigation, where, among other things, the employee is required to provide the investigating agency with access to the employee's financial records, consumer reports, and travel records. *See* E.O. 12968, Section 1.2(e)(1). An interviewer with the Department of State's Office of Personnel Security and Suitability ("PSS") conducts a number of interviews,

including interviews with the employee. PSS employees then prepare a summary of the investigation, which is submitted to an adjudicator within PSS. Adjudication can result in a favorable security clearance determination, denial or revocation of clearance eligibility, or suspension from employment, among other outcomes.

8. Adjudicators are guided by specific criteria in granting or denying a security clearance. As set forth in 12 FAM 233.1, adjudicators can grant a security clearance to employees "only if they are U.S. citizens for whom an appropriate investigation has been completed," and if the adjudicator is satisfied that their "personal and professional history affirmatively indicates loyalty to the United States, strength of character, trustworthiness, honesty, reliability, discretion, and sound judgment; freedom from conflicting allegiances and potential for coercion; and willingness and ability to abide by regulations governing the use, handling, and protection of classified information." The FAM specifies 13 factors "that may raise eligibility concerns," including "Foreign Influence," "Foreign Preference," "Sexual Behavior," and "Financial Considerations."

9. In connection with his initial employment with the State Department and periodic re-investigations, GUERTIN signed and submitted SF-86 forms on or about September 27, 2005; November 19, 2010; and April 3, 2016.

10. GUERTIN submitted his November 19, 2010 SF-86 online through the Electronic Questionnaires for Investigations Processing ("e-QIP") system, while posted to Islamabad, Pakistan. GUERTIN participated in an interview with a background investigator in connection with his background investigation on or about February 23, 2011, at a location in Islamabad, Pakistan.

11. GUERTIN submitted his April 3, 2016 SF-86 online through the e-QIP system, while posted to Taipei, Taiwan. GUERTIN participated in an interview with a background investigator in connection with his background investigation on or about May 31, 2016, at a location in Taipei, Taiwan.

12. On or about April 12, 2016, as part of GUERTIN's background investigation, a State Department investigator submitted a query to the Office of Personnel Management ("OPM") Security/Suitability Investigations Index, which is a repository hosted by OPM on computer servers in the District of Columbia containing background investigation records of Federal employees, military personnel, and contractors. State Department investigators also conducted multiple background investigation interviews with witnesses in the District of Columbia regarding GUERTIN's background investigation.

## Undisclosed Conduct by GUERTIN

### A. Undisclosed Romantic Relationship with Chinese National Whose U.S. Visa Application GUERTIN Adjudicated

13. As described in further detail below, GUERTIN engaged in several categories of conduct which he intentionally and fraudulently concealed from State Department background investigators.

14. On or about February 1, 2008, while GUERTIN was posted to Shanghai, China, GUERTIN explained to an associate in an electronic communication that he was required to fully disclose foreign national contacts to the State Department, including in particular Chinese foreign national contacts. GUERTIN stated: "i have to report EVERY Chinese person i develop any relationship with / i mean any relationship."

15. In or about June 2008, GUERTIN conducted a visa application interview with CHINESE NATIONAL 1 in his capacity as a consular officer at the U.S. Consulate in Shanghai,

China. On or about June 11, 2008, GUERTIN favorably adjudicated CHINESE NATIONAL 1's application for a U.S. visa.

16.     Two days later, on or about June 13, 2008, GUERTIN sent CHINESE NATIONAL 1 an e-mail stating: "I gave you an interview a few days ago here in Shanghai, and thought you were very cute and interesting! :) Was wondering if you'd be interested in going out for dinner or a bite to eat sometime." GUERTIN initiated a personal and sexual relationship with CHINESE NATIONAL 1 that lasted through at least in or about July 2009.

B. Undisclosed Financial Problems Due to Gambling

17.     On or about March 17, 2011, GUERTIN told an associate in an electronic communication that he had lost approximately $34,000 playing online poker and contemplated closing his bank account to avoid paying his debt.

18.     In the months leading up to July 2015, GUERTIN incurred significant debts as a result of his gambling activity. As of in or about July 2015, GUERTIN had overdrawn one credit card and carried a balance of $23,972.20 on a second credit card out of a credit limit of $24,000.00.

C. Undisclosed $225,000 Loan Agreement with Two Chinese Nationals, Collateralized by GUERTIN's House

19.     On or about April 14, 2015, GUERTIN entered into a notarized loan agreement with CHINESE NATIONAL 2 and her husband, CHINESE NATIONAL 3, to borrow $225,000 over a period of approximately 72 months. Among other things, the loan was collateralized by a one-third ownership interest in GUERTIN's house in the District of Columbia, provided CHINESE NATIONAL 2 and CHINESE NATIONAL 3 with the right to receive one-third of the rental income from the house, and provided CHINESE NATIONAL 2 and CHINESE NATIONAL 3 with an option to take ownership over one-third of GUERTIN's house at the conclusion of the loan term.

## COUNT ONE
### (Wire fraud)

20.     The allegations contained in paragraphs one through nineteen of this Indictment are re-alleged and incorporated as though set forth in full herein.

21.     From at least in or about November 2010 and continuing through in or about August 2017, in the District of Columbia and elsewhere, the defendant, GUERTIN, devised and intended to devise a scheme to defraud and to obtain money and property from the State Department by means of materially false and fraudulent pretenses, representations, and promises, by making and causing to be made false and misleading statements, and by withholding and concealing information, on his SF-86 background investigation questionnaires and in interviews with State Department background investigators.

### Purpose of the Scheme To Defraud

22.     It was the purpose of the scheme to defraud for the defendant, GUERTIN, to unlawfully enrich himself by maintaining his State Department employment and salary despite engaging in conduct that would jeopardize his suitability for a security clearance and a position of trust as a Foreign Service Officer, including engaging in an unreported sexual relationship with a Chinese national after adjudicating the Chinese national's U.S. visa application; accruing significant gambling debts; and entering into an unreported loan agreement with two Chinese nationals for $225,000 that was collateralized by GUERTIN's house.

### Manner and Means

23.     The manner and means by which this purpose was carried out included the following:

a. GUERTIN made false and misleading statements and withheld and concealed information on his SF-86 background investigation questionnaires and in interviews with State Department background investigators;

b. GUERTIN solicited informal loans from private individuals in order to conceal his gambling debts from State Department investigators; and

c. GUERTIN arranged to have a $45,000 disbursement of his $225,000 loan from two Chinese nationals paid in cash, and deposited the cash proceeds in structured cash deposits into multiple bank accounts, in an effort to avoid currency transaction reporting requirements and avoid creating bank records that could alert financial investigators to his gambling debts.

### Acts in Furtherance of the Scheme

A. <u>Concealment of Romantic Relationship with Chinese National Whose U.S. Visa Application GUERTIN Adjudicated</u>

24. On or about November 19, 2010, GUERTIN submitted his November 19, 2010 SF-86 electronically. Section 19 of the November 19, 2010 SF-86 required GUERTIN to disclose any "close and/or continuing contact with a foreign national within the last seven (7) years with whom you, or your spouse, or cohabitant are bound by affection, influence, common interests, and/or obligation?" GUERTIN intentionally and fraudulently failed to disclose his relationship with CHINESE NATIONAL 1 to the State Department in response to the foregoing question.

25. On or about April 3, 2016, GUERTIN submitted the April 3, 2016 SF-86 electronically. Section 19 of the April 3, 2016 SF-86 required GUERTIN to disclose any "close and/or continuing contact with a foreign national within the last seven (7) years with whom you, or your spouse, or cohabitant are bound by affection, influence, common interests, and/or

obligation?" GUERTIN intentionally and fraudulently failed to disclose his relationship with CHINESE NATIONAL 1 to the State Department in response to the foregoing question.

B. Concealment of Financial Problems Due to Gambling

26. On or about July 13, 2015, GUERTIN sent an e-mail to an associate requesting an emergency loan of $10,000 in order to pay down his gambling debts in advance of his security clearance re-investigation. GUERTIN stated: "I desperately need 10 dimes to get my [stuff] in order and pass a security clearance review to hold onto my job." GUERTIN further explained: "Every 5 years the State Dept. does a security clearance re-investigation, and mine is coming up in 3 months, and they're for sure going to see that my credit score dropped hard from the last time they checked. That will cause them to get suspicious, and then they'll search my bank account transactions and find all the gambling related [stuff]. . . . [t]hey'll send me home from Taiwan and if they revoke my security clearance I'll lose my job within 6 months."

27. Further on or about July 13, 2015, GUERTIN's associate declined to loan GUERTIN any money. GUERTIN responded: "Yeah I hear you, knew it was a long shot but had to try. I'll just have to hope the investigators do a sloppy job and I get a pass."

28. On or about April 3, 2016, GUERTIN submitted the April 3, 2016 SF-86 electronically. Under Section 26 of the SF-86, GUERTIN responded to the question, "Have you EVER experienced financial problems due to gambling?" by answering, "No." That response was not accurate. GUERTIN intentionally and fraudulently failed to disclose to the State Department that he was a heavy gambler, had incurred significant debts due to gambling, and had requested loans from associates to cover gambling losses in response to the foregoing question.

C. <u>Concealment of $225,000 Loan Agreement with Two Chinese Nationals, Collateralized by GUERTIN's House</u>

29.     On or about April 14, 2015, upon completion of the $225,000 loan agreement with CHINESE NATIONAL 2 and CHINESE NATIONAL 3, GUERTIN caused CHINESE NATIONAL 2 and CHINESE NATIONAL 3 to provide GUERTIN with an initial disbursement of $5,000 on the loan.

30.     On or about April 15, 2015, GUERTIN directed CHINESE NATIONAL 2 and CHINESE NATIONAL 3 to meet him at a location in the District of Columbia for the purpose of withdrawing $45,000 in cash from their bank account for a further disbursement of the $225,000 loan. GUERTIN instructed them: "Also please ask the bank manager to give you as much as possible of the money in $100 bills so it's not so ridiculously bulky to carry around and deposit, thx!"

31.     On or about April 17, 2015, GUERTIN caused CHINESE NATIONAL 3 to receive a bank transfer in the amount of $45,000, and then to withdrew the entire amount in cash at a bank branch in the District of Columbia.

32.     On or about the same day, April 17, 2015, GUERTIN deposited $7,600 in cash into one of his bank accounts at an ATM in the District of Columbia.

33.     Between on or about April 17, 2015 through at least on or about May 20, 2015, GUERTIN deposited more than $32,000 in cash into three different bank accounts (including the above-referenced deposit of $7,600 on or about April 17, 2015). GUERTIN structured these cash transactions into increments of less than $10,000 each in order to avoid triggering the currency transaction reporting requirements under 31 U.S.C. § 5313 and 31 C.F.R. Chapter X § 1010.311, which require any financial institution that engages with a customer in a currency transaction in

excess of $10,000 to report that transaction to the Financial Crimes Enforcement Network ("FinCEN") on FinCEN Form 104, which is known as a Currency Transaction Report ("CTR").

34. On or about April 3, 2016, GUERTIN submitted the April 3, 2016 SF-86 electronically. Section 19 of the April 3, 2016 SF-86 required GUERTIN to disclose any "close and/or continuing contact with a foreign national within the last seven (7) years with whom you, or your spouse, or cohabitant are bound by affection, influence, common interests, and/or obligation?" GUERTIN intentionally and fraudulently failed to disclose his $225,000 loan agreement with CHINESE NATIONAL 2 and CHINESE NATIONAL 3, collateralized by a one-third ownership interest in his house, to the State Department in response to the foregoing question.

35. In addition, Section 20B of the April 3, 2016 SF-86 asked: "Have you in the past seven (7) years been involved in any other type of business venture with a foreign national not described above (own, co-own, serve as business consultant, provide financial support, etc.)?" GUERTIN answered "No." That response was not accurate. GUERTIN intentionally and fraudulently did not disclose the above-referenced $225,000 loan agreement with CHINESE NATIONAL 2 and CHINESE NATIONAL 3, collateralized by a one-third ownership interest in his house, to the State Department in response to the foregoing question.

### Execution of the Scheme

36. On or about the date set forth below, in the District of Columbia and elsewhere, the defendant, PAUL MICHAEL GUERTIN, a resident of the District of Columbia, for the purpose of executing and attempting to execute the above-described scheme to defraud, did cause to be transmitted by means of wire communication in interstate commerce, the following writings, signs, signals, and sounds:

| Count | On or About Date | Description |
|---|---|---|
| 1 | April 12, 2016 | An interstate wire signal into and through the District of Columbia generated by an automated query of the Office of Personnel Management Security/Suitability Investigations Index in connection with GUERTIN's State Department background investigation |

**(Wire Fraud, in violation of Title 18, United States Code, Section 1343)**

## COUNT TWO
### (Obstructing an official proceeding)

37. The allegations contained in paragraphs one through nineteen and twenty-four through thirty-five of this Indictment are re-alleged and incorporated as though set forth in full herein.

38. On or about April 3, 2016 and May 31, 2016, within Taiwan and out of the jurisdiction of any particular State or district, the defendant, PAUL MICHAEL GUERTIN, a resident of the District of Columbia, did corruptly obstruct, influence, and impede, and did attempt to corruptly obstruct, influence, and impede, an official proceeding, to wit, a background investigation and security clearance adjudication by the United States Department of State, located in the District of Columbia, by making false and misleading statements and withholding and concealing information regarding whether PAUL MICHAEL GUERTIN had any close and continuing contact with a foreign national within the last seven years with whom PAUL MICHAEL GUERTIN was bound by affection, influence, common interests, and obligation; whether PAUL MICHAEL GUERTIN had ever experienced financial problems due to gambling; and whether PAUL MICHAEL GUERTIN was involved in any business venture with a foreign national, all in violation of Title 18, United States Code, Section 1512(c)(2).

**(Obstructing an official proceeding, in violation of
Title 18, United States Code, Section 1512(c)(2))**

## FORFEITURE ALLEGATION

1. Upon conviction of the offense alleged in Count One, the defendant shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to these offenses, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c). The United States will also seek a forfeiture money judgment for a sum of money equal to the value of any property, real or personal, which constitutes or is derived from proceeds traceable to this offense.

2. If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendant:

   a. cannot be located upon the exercise of due diligence;

   b. has been transferred or sold to, or deposited with, a third party;

   c. has been placed beyond the jurisdiction of the Court;

   d. has been substantially diminished in value; or

   e. has been commingled with other property that cannot be divided without difficulty;

the defendant shall forfeit to the United States any other property of the defendant, up to the value of the property described above, pursuant to Title 21, United States Code, Section 853(p).

**(Criminal Forfeiture, pursuant to Title 18, United States Code, Section 981(a)(1)(C); Title 28, United States Code, Section 2461(c); and Title 21, United States Code, Section 853(p))**

A TRUE BILL:

FOREPERSON.

_Channing D. Phillips/jph_
ATTORNEY OF THE UNITED STATES IN
AND FOR THE DISTRICT OF COLUMBIA

12